**SO ORDERED.**

**SIGNED this 12th day of June, 2018.**



_____
Janice Miller Karlin
United States Bankruptcy Judge
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF KANSAS

| | |
|---|---|
| In re: | Case No. 16-20069 |
| Ronald D. Shuman | Chapter 7 |
|       Debtor. | |

### Memorandum Opinion and Order Denying
### Trustee's Motion to Approve Settlement

The Trustee asks this Court to approve a "compromise" he reached with Deutsche Bank, the creditor who claims to have a first priority lien on proceeds from a trustee sale of non-exempt real property located in Topeka, Kansas.[1] That compromise results in Deutsche receiving 100% of the net sale proceeds. Because the Court finds that the compromise is not in the best interest of the bankruptcy estate, nor is it fair and equitable, the Court denies the motion.

---

[1] Doc. 250.

I. **Findings of Fact and Procedural History**[2]

This controversy has its origins in 2007, when Debtor executed a note and mortgage to Wells Fargo to buy real property at 3418-20 SE Minnesota in Topeka. Deutsche Bank is the current holder of these instruments. After Debtor failed to make the required payment due December 1, 2008, Deutsche Bank filed four state court foreclosure actions—one in 2009, two in 2013, and the final one in 2015. With the exception of the 2015 case, which was pending at the time Debtor filed his Chapter 7 bankruptcy petition, Deutsche dismissed each case without prejudice. Deutsche asserted the 2008 default date in each foreclosure petition.

The Trustee filed an adversary proceeding, Case No. 17-6061, seeking, on behalf of the estate pursuant to 11 U.S.C. §§ 542, 544, 550 and 551, to avoid the liens on the subject property held by three creditors. The Trustee argued that the relevant 5-year Kansas Statute of Limitations, K.S.A. § 60-518, had expired. Deutsche responded by arguing that Debtor had renewed the statute of limitations, pursuant to K.S.A. § 60-520(a), when he admitted he owed the debt during discovery in the 2009 foreclosure case.

During that case, Deutsche served Debtor Requests for Admission. Debtor's counsel—but not Debtor—timely signed a response to the requests. The parties claim the relevant requests and responses follow:

---

[2] The facts are derived from the stipulation of facts and attached exhibits in the underlying adversary proceeding, Case No. 17-6061, Doc. 30. The stipulations are signed by the only parties who have not either defaulted (Defendants Shuman) or Central National Bank, which did not oppose the Trustee's Motion to Approve Settlement.

REQUEST NUMBER 3: On or about 01/05/2007, Ron D. Shuman AKA Ronald D. Shuman [hereinafter "Borrowers"] borrowed money from, executed and delivered to Wells Fargo Bank, N.A., Note, payable in monthly installments, in the original principal sum of $200,001.00 together with interest as stated.
RESPONSE: Admitted

REQUEST NUMBER 4: As part of the loan transaction and in order to secure payment of the Note, Borrowers executed and delivered to Wells Fargo Bank, N.A., a Mortgage of the same date upon the following described real estate: [the Minn Ave property]. The Mortgage was duly recorded on January 8, 2007, in the Office of the Register of Deeds of Shawnee County, Kansas, in Book 4443, Page 61.
RESPONSE: Admitted.

REQUEST NUMBER 7: Borrowers have failed and refused to make the payments as provided for in the Note and Mortgage, and said contracts are delinquent and due for the December 1, 2008, payment and all payments since then
RESPONSE: Denied. Shuman did not refuse to make payments and Shuman was attempting to resolve issues per 22 of the Mortgage when suit was filed.

REQUEST NUMBER 8: The Note and Mortgage are in default and Plaintiff has elected to accelerate the maturity date of the contracts pursuant to their terms and declare the entire unpaid principal balance of $174,323.63 due and payable together with interest at 8.37500 percent per annum from December 1, 2008 until paid.
RESPONSE: Denied that plaintiff has the right to elect anything and Shuman had a right as set forth in Paragraph 22 of the Mortgage regarding issues of Default.

While the adversary proceeding was pending, the Trustee received permission to sell the property, with the Court to later determine who was entitled to the proceeds. He sold the property for a net of $134,667, after deduction of expenses including the Trustee commission of $8,000, Trustee attorney fees of

-3-

$2,000, taxes, and closing costs. The Trustee has also spent an additional $17,293 to protect the property, leaving $117,061 (less accrued bank fees) in dispute.

The Trustee ultimately came to agree with Deutsche's position that Debtor's responses to the 2009 Requests for Admission apparently had renewed the limitations period. As a result, he filed this Motion to Approve Settlement. In that Motion, he "acknowledge[d] that Deutsche Bank has raised an issue that could constitute a valid defense to the Complaint. Rather than litigate this issue, the Trustee determined that the interests of the estate and the unsecured creditors are best served by reaching a Settlement with Deutsche Bank...." That settlement includes paying Deutsche 100% of the net settlement proceeds *and* allowing it to file an unsecured deficiency claim for $321,251 (subject to credit of the amounts received).

Denison State Bank has opposed the compromise because it holds a large, unsecured claim and stands to receive a significant portion of the sale proceeds if they are distributed to unsecured creditors on a pro rata basis. Under the compromise, however, Denison stands to receive nothing from the settlement.[3]

## II. Conclusions of Law

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(a)

---

[3] Central National Bank originally claimed to have a valid lien on the property, but it has not pressed that position since its initial answer. It has neither opposed the settlement nor participated in drafting stipulations that the parties to the adversary proceeding agreed to draft for use in establishing the facts relevant to the instant motion, in lieu of proceeding with the adversary.

and (b) and § 1334. This is a core proceeding within the meaning of 28 U.S.C. 157(b)(2)(A), (K) and (O). Venue is proper pursuant to 28 U.S.C. § 1408.

    **a.    Did Debtor's counsel's responses to the Requests for Admission in the 2009 case renew the statute of limitations?**

Deutsche Bank, and apparently the Trustee, claim that the 5-year statute of limitations that otherwise would have expired in 2013 was reset when Debtor, via counsel, answered the Requests for Admissions in the 2009 state court foreclosure. They rely on K.S.A. 60-520(a), which provides:

> In any case founded on contract, when any part of the principal or interest shall have been paid, or an acknowledgment of an existing liability, debt or claim, or any promise to pay the same, shall have been made, an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment or promise; but such acknowledgment or promise must be in writing, signed by the party to be charged thereby.

Deutsche Bank's argument requires the Court to first consider whether Debtor's responses to the Requests for Admission are sufficient to restart the statute of limitations.

Kansas courts have set a high bar for an acknowledgment to be sufficient to renew the statute of limitations. In *Bowen v. Westerhaus*,[4] the Supreme Court held that "[a]n acknowledgment which will remove the bar of the statute of limitations must be distinct, unequivocal, and without qualification, and nothing less than a direct admission of a present existing liability is sufficient." Therefore, an

---

[4] 224 Kan. 42, 49 (1978).

-5-

acknowledgment that the debt once existed, but which does not explicitly admit to liability on the present debt, is insufficient to reset the statute of limitations.[5]

In *Dechand Roofing & Supply Co. v. Schumaker*, the debtor sent a letter to the creditor saying "... I have lost everything I had but will make a settlement with you in this way will pay $25 per mo for 12 months." The Kansas Supreme Court held that even this statement (to pay more than the balance then due, over time) was an insufficient acknowledgment to reset the statute of limitations. Again, the Court noted that an acknowledgment must be distinct and unequivocal as to the present, existing liability, or it must contain a definite promise to pay the note or account.[6]

The few cases cited by Deutsche involve statements by debtors that are much more definite than the statements in the present case.[7] Those cases involve

---

[5] *Dechand Roofing & Supply Co. v. Schumaker*, 174 Kan. 82, 84-85 (1953) (interpreting the prior version of the statute, K.S.A. § 60-312, which was similar in all pertinent ways to K.S.A. 60-520).

[6] *Id.* at 83-84. *See also Wichita Sanitarium v. Bierschbach*, 136 Kan. 84, 85 (1932) (debtor's request for additional time in connection with indebtedness insufficient acknowledgment of present existing liability); *Corbett v. Hoss*, 98 Kan. 290, 291-92 (1916) ("A debtor writing they cannot pay at the present but asking the holder of the obligation to be patient is not sufficient when the writing is making a nonspecific reference to an indebtedness"); *Hamilton v. Beaubien*, 92 Kan. 944, 945 (1914) (noting general references to indebtedness or expressions of a desire to raise money to pay the obligation is not sufficient to overcome the bar of the statute of limitations).

[7] *Hottel v. Kemp*, 139 Kan. 239, 244 (1934) (multiple letters from mortgagor addressing liability were held to be a sufficient acknowledgment to toll the statute of limitations, even when one writing on its own would have been insufficient); *Harbaugh v. Herr*, 131 Kan. 235, 236 (1930) (writing that referenced amount of outstanding balance followed by an expression of intent to repay was deemed sufficient to toll statute of limitations). *See also Cosandier v. Junod*, 127 Kan. 524, 526 (1929) (writing sufficient when debtor requested more time to pay and a desire to renew the note); *Clark v. King*, 54 Kan. 222, 223 (1894)

-6-

situations in which a debtor explicitly acknowledged a present, existing obligation. In this case, however, Debtor's answers can, at best, be seen as an acknowledgment that he originally owed the debt. But the answers cannot be construed as his acknowledgment that he has an *existing* debt, nor that he is willing to pay that debt.

Because Debtor's answers to the Requests for Admission were not distinct, unequivocal, and without qualification, and were not a direct admission of a present existing liability, they do not serve to renew the statute of limitations under K.S.A. § 60-520(a).[8]

### b. Judicial Estoppel

Deutsche finally argues that Debtor (via the Trustee) should be judicially estopped from now denying he owes the debt, warning that "the integrity of the judicial system will be undermined if it allows the Debtor (and those standing in his shoes) to pursue inconsistent sworn positions in multiple cases and before different tribunals."

Judicial estoppel is a discretionary remedy. It is used by courts to prevent the

---

(writing sufficient when debtor corrected creditor as to balance owed).

[8] Because these admissions were insufficient to renew the statute of limitations, the Court need not decided two related questions the parties raise: whether a party is bound by his retained counsel's answers to a request for admissions, and whether a party's answers to a request for admissions can be used in a later proceeding, notwithstanding the plain language in K.S.A. § 60-236(b): "An admission under this section is not an admission for any other purposes and cannot be used against the party in any other proceeding."

Case 16-20069    Doc# 268    Filed 06/12/18    Page 7 of 11

"improper use of judicial machinery." In *Johnson v. Lindon City Corp.*,[9] the Tenth Circuit laid out a 3-part test for judicial estoppel: 1) is the party's later position *clearly inconsistent* with the party's previous position? 2) Did the party succeed in convincing the prior court of its position, to the point that allowing the later, inconsistent position would create the perception that one of the courts was misled? And 3) would the party derive an unfair advantage or impose an unfair detriment on the opposing party by asserting the inconsistent position, if not estopped?

As to the first factor, Debtor's prior position in the state court foreclosure litigation is not clearly inconsistent with the Trustee's current position. Debtor's prior position was that the debt once existed. As already noted, the Debtor's prior answers do not constitute an admission of a current, ongoing obligation to pay the debt. Debtor's current position (and the Trustee's original position in the adversary proceeding) is that the debt, which admittedly existed at one time, was not sufficiently acknowledged to renew the statute of limitations. The Court finds that these positions are not clearly inconsistent. Debtor could have owed the debt at one time, but have defenses to repaying the debt now either due to the passage of time or operation of law.[10]

---

[9] 405 F.3d 1065, 1068 (10th Cir. 2005).

[10] The cases on which Deutsche Bank relies are again distinguishable. *Johnson*, 405 F.3d at 1068 (father and son plead guilty in a criminal case and later brought civil suit for wrongful arrest; court held that judicial estoppel dictated the prior admissions were controlling); *In re Cassidy*, 892 F.2d 637 (7th Cir. 1990) (in a tax proceeding, Debtor's tax debt was ultimately declared nondischaregable by the Seventh Circuit. Debtor later re-opened his bankruptcy case, seeking to find the tax debt and penalties dischargeable. The Seventh Circuit found they were not in light of the debtor's admissions and rulings in the

And Deutsche Bank has not even attempted to address the second factor—that the Debtor succeeded in convincing the prior court of an inconsistent position. This is likely because Debtor did not succeed; the state court action in which the Requests for Admission were issued was ultimately dismissed. There was never a state court ruling, therefore, the state court was never "convinced" of Debtor's position.

Finally, Deutsche does not persuade on the third factor, either. Because the Court has found the positions are not inherently inconsistent, the Debtor (or here, the Trustee) will not derive an unfair advantage or impose an unfair detriment on the opposing party by asserting that the statute of limitations has expired. The Court has no concern that the "integrity of the judicial system will be undermined" with this result, as Deutsche warns.

### c. Approval of settlement under Fed. R. Bank. P. 9019

The Trustee, as proponent of the settlement, carries the burden of showing that the proposed settlement is both fair and equitable and should be approved.[11] In the Tenth Circuit, courts consider four factors when determining whether to approve a settlement under Rule 9019 of the Federal Rules of Bankruptcy Procedure: 1) probability of success of the underlying litigation on the merits; 2) possible difficulty in collection of a judgment; 3) complexity and expense of the

---

prior case).

[11] *In re Asset Resolution*, No. 12-22932, 2015 WL 4718795, at *4 (Bankr. D. Kan. Aug. 5, 2015).

litigation; and 4) interest of the creditors in deference to their reasonable views.[12]

The first factor—the probability of success in the underlying litigation—is the most important in this case. As is evident from the preceding findings of fact and conclusions of law, the Court finds that the Trustee has a good chance of succeeding on the merits of the underlying litigation. However, instead of prosecuting the winning argument that the statute of limitations has expired, the Trustee's proposal settles the claim for zero dollars to the bankruptcy estate, gifting Deutsche Bank virtually everything it could hope to recover from the adversary, while unsecured creditors receive no distribution from the sale.

The second factor—difficulty in collection—similarly does not weigh in favor of settlement. The sale of the property has been completed, and the proceeds currently sit in the Trustee's trust account. Difficulty in collection in this instance is nonexistent.

As to the third factor—complexity and expense of litigation—the parties have already stipulated to the facts and briefed the issues they deemed dispositive. Whatever complexity is involved has, in all likelihood, already been conquered by formulating the stipulation of facts, and by the briefing already completed for this motion to compromise.

Regarding the final factor—the interest of the creditors in deference to their reasonable views—the only two creditors who have opined are Deutsche Bank,

---

[12] *In re Kopexa Realty Venture Co.*, 213 B.R. 1020, 1022 (10th Cir. BAP 1997).

-10-

Case 16-20069   Doc# 268   Filed 06/12/18   Page 10 of 11

which stands to recover 100% of the sale proceeds, and Denison, which stands to receive nothing. Unsurprisingly, Deutsche is in favor of the settlement, while Denison is not. This factor is of neutral value. Thus, the Trustee has not carried his burden on any of the factors the Court is required to consider.

## III. Conclusion

Because the Trustee has not shown that the compromise is in the best interest of the bankruptcy estate, nor is it fair and equitable, and is really a "compromise" only in the loosest sense of the word, the Court denies the Motion to Approve the Settlement Agreement.

**It is so ordered.**

# # #